**Opinion filed July 26, 2018**



# In The

# Eleventh Court of Appeals

_____

## No. 11-18-00068-CV

_____

## IN THE INTEREST OF S.M.B., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 8743-CX**

## M E M O R A N D U M   O P I N I O N

S.M.B.'s parents appeal from an order in which the trial court terminated their parental rights. On appeal, each parent challenges the sufficiency of the evidence to support the trial court's findings in support of termination. We affirm.

### I. *Termination Standards and Findings*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational

trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

After the final hearing in this case, the trial court found that both S.M.B.'s mother and father had committed one of the acts listed in Section 161.001(b)(1)— namely, subsection (O). *See* FAM. § 161.001(b)(1)(O). The trial court also found,

in accordance with Section 161.001(b)(2), that termination of both parents' parental rights would be in the best interest of S.M.B. Both parents challenge each of these findings.

## II. *Evidence at Trial*

The record shows that the Department of Family and Protective Services initially became involved with S.M.B. a few months after he was born. S.M.B., a medically fragile child, was set for discharge from Cook Children's Medical Center when it came to the attention of the hospital staff that both of S.M.B.'s parents were homeless at the time. In addition, they were also concerned with the father's erratic behavior toward S.M.B. and the hospital staff, as well as the mother's unwillingness to protect S.M.B. from the father's actions and unwillingness to care for S.M.B.

The father was seen by multiple nurses yelling and cursing at S.M.B. when S.M.B. cried. Both parents were asked about their plan once S.M.B. was discharged from the hospital. S.M.B.'s parents could not give a definite answer, and neither could provide S.M.B. with stable housing, something that was imperative with S.M.B.'s medically fragile state. S.M.B.'s parents also admitted that the father had a mental illness that he was not being treated for, which caused his erratic and unstable behavior in the hospital. The mother knew of the illness and behavior but did not attempt to protect S.M.B. from the father when he was acting erratically, and she did not show any attempt at bonding with or taking care of S.M.B. After Department personnel met with both parents in the hospital, S.M.B. was removed and placed into foster care.

Both parents have a history with the Department, which involved their older daughter and another child. According to an earlier allegation, the Department had "reason to believe" that Appellants neglectfully supervised their daughter. In another allegation, the Department also had "reason to believe" that the father had sexually abused another child. The father did not have a criminal history when the

investigation in this case began, but while this case was pending, he was charged with the third-degree felony offense of assault family violence, impeding breath. This assault family violence charge was still pending at the time of the termination hearing. At the time of the investigation, the parents' other child was living with a family member.

Upon removal, both parents were issued services and tasks that they were required to complete in order to have S.M.B. returned. After initial services and tasks were assigned, the Department received a report of the mother's drug use. The mother was then asked to complete drug tests on multiple occasions; she did not complete the drug tests. The mother admitted to marihuana use on November 15, 2017. The mother had testified in a prior hearing that she used marihuana to help her sleep at night. In addition, the father failed a drug test and refused to take any more after that. Testimony indicated that not all tasks were completed by either parent but that progress was made to the point that the mother felt that she could care for S.M.B.

The parents agreed that the foster parents were taking good care of S.M.B., but the parents believed they had made changes that would make them better parents and did not want their rights to be terminated. However, the conservatorship caseworker testified that she believed that termination of both parents' rights would be in S.M.B.'s best interest. Based on the parents' history with the Department, the father's criminal history, and a severe lack of substantial progress of court-ordered tasks and services, the caseworker did not believe that the parents would provide S.M.B. with a safe home and stable environment.

### III. *Analysis*

Both parents challenge the legal and factual sufficiency of the evidence to support the trial court's finding under subsection (O). Both parents also challenge

4

the trial court's finding that termination of their parental rights would be in the best interest of S.M.B.

> A.   *The Department adduced clear and convincing evidence, under Section 161.001(b)(1)(O), that the parents failed to comply with their court-ordered family service plan.*

Under subsection (O), there must be clear and convincing evidence that the parents did not fully comply with their court-ordered family service plan—as required to support a finding under Section 161.001(b)(1)(O). *In re C.G.*, No. 11-17-00301-CV, 2018 WL 1916671, at *2 (Tex. App.—Eastland Apr. 19, 2018, no pet.) (mem. op.). In this case, the parents' tasks included attendance and completion of individual counseling, signature of all necessary release forms, and compliance with the no-show policy of S.M.B.'s visits. The service plan also included allowance of announced and unannounced visits to their homes; reporting all significant relationships; and reporting changes in household composition, address, phone number, or employment status within three days of the change. Both parents also were to obtain and maintain employment and stable housing, attend all visitations with and appointments of S.M.B., engage in and complete parenting classes, submit to psychological exams and complete recommendations made by the provider, and refrain from all illegal drug use.

S.M.B.'s mother did not have a driver's license.[1] She had told the Department that she was not interested in getting one, that she also did not have a car or reliable means of transportation for S.M.B.'s medical appointments, and that taking the bus was time consuming. She also had difficulty describing how to feed S.M.B. using his "G-button" and admitted that she used drugs at night to help her sleep, which could conflict with S.M.B.'s feeding. S.M.B.'s father was required to attend and

---

[1]S.M.B.'s mother testified that she thought having a driver's license was a necessity. The record also reflects that S.M.B.'s father did not have a driver's license.

complete Batterer's Intervention Prevention Program (BIPP), as well as contact MHMR Betty Hardwick and complete an assessment. S.M.B.'s father did not complete BIPP classes, did not contact MHMR Betty Hardwick for an assessment in a timely manner, and did not refrain from criminal activity. S.M.B.'s father also did not maintain stable employment and housing and did not complete the recommendations from the psychological evaluation providers.

Though each parent respectively completed a few of their tasks, they each did not complete individual counseling, did not comply with the significant relationship report, missed some of S.M.B.'s medical appointments, and did not refrain from the use of illegal drugs. After a review of the record, we hold that the evidence is legally and factually sufficient to support the trial court's finding under subsection (O) because both parents had an extensive list of tasks and services they were required to complete before the return of S.M.B., and they failed to comply with that plan.

> B.    *The Department adduced clear and convincing evidence, under Section 161.001(2), that termination was in the best interest of the child.*

Based upon the *Holley* factors and the evidence in the record, we hold that the trial court's best interest findings were supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. We first note that the Department introduced evidence that S.M.B. is medically fragile, that he has significant emotional and physical needs, and that Appellants had failed to meet those needs. The Department also adduced evidence that Appellants had failed to comply with the court-ordered family service plan and had failed to maintain stable housing and employment. We also note that the Department adduced evidence of the emotional and physical danger to S.M.B., both now and in the future, if S.M.B. were to remain with the parents. The Department further adduced evidence that S.M.B. had done well in the current placement with foster parents, who attend to S.M.B.'s needs and are willing

to care for S.M.B. until a permanent adoptive family is located and approved. The Department notes that it can find an adoptive family, but an adoption plan cannot begin until after a parent's rights are terminated. We conclude that the trial court could reasonably have formed a firm belief or conviction that termination of the parents' parental rights would be in the best interest of S.M.B. *See In re K.W.C.*, No. 11-17-00215-CV, 2018 WL 826885, at *2 (Tex. App.—Eastland Feb. 8, 2018, no pet.) (mem. op.).

IV. *This Court's Ruling*

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


July 26, 2018

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J. [2]

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.